Jesse S. Brar, Utah Bar # 9469
Email:  jbrar@xmission.com
670 East 3900 South, Suite 101
Salt Lake City, Utah 84107
Telephone:  (801) 269-9541
Facsimile:   (801) 269-9581

Sharon Preston, Utah Bar # 7690
Email: sharon.preston@yahoo.com
670 East 3900 South, Suite 101
Salt Lake City, Utah 84107
Telephone:  (801) 269-9541
Facsimile:   (801) 269-9581

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Paula Self, Linda Duncan, Sheri Kiddy, Leslie Demull, and Timothy Van Hoose Individually and on Behalf of Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br><br>TPUSA, Inc. and Teleperformance Group, Inc., Corporations,<br><br>Defendants. | **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' EMERGENCY MOTION FOR CEASE AND DESIST ORDER**<br><br><br><br>Case No.: 2:08-CV-395 PMW<br><br>Judge: Hon. Paul M. Warner |

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................... 1

II.  FACTUAL BACKGROUND ..................................................................................... 2

III. LEGAL ARGUMENT ................................................................................................ 7

   A. An "Emergency" Motion is an Improper Procedural Vehicle .................................. 7

   B. Defendants are Not Entitled To the "Cease And Desist Order"
      Because There Was Nothing Misleading/Inaccurate About
      The Website And Amendments Have Been Made To The Website ........................ 7

      1. Plaintiffs' Website Is Perfectly Permissible According to Supreme
         Court Precedent and Normal Practices in Collective/Class Action Cases ......... 8

      2. Plaintiffs' Counsel's Website, as it Originally Existed, Was Not
         Improper – But Plaintiffs' Counsel Has Nevertheless Modified
         the Website to Address Defendants' Concerns .................................................. 11

      3. Defendants' Own Cases Recognize That the Court's Oversight
         Role Is Not Triggered By Pre-Notice Communication, and That
         "Curative Notice" Is Only Available as a Remedy When Improper
         "Notice" Has Been Sent out .............................................................................. 14

      4. Even in Cases Involving Inaccurate/Misleading Statements,
         Courts Have Only Ordered Modifications, and Not "Dismantling'
         of Websites (as Requested by Defendants) ...................................................... 16

   C. Defendants Rule 403 Motion, Asking That Certain Evidence Be
      Excluded At Trial, Is Premature and Baseless .................................................... 17

IV.  CONCLUSION .......................................................................................................... 19

Representative Plaintiffs, Paula Self, Linda Duncan, Sheri Kiddy, Leslie Demull, and Timothy Van Hoose ("Representative Plaintiffs"), by and through their attorneys, Jesse S. Brar and Sharon L. Preston, hereby submit the following Response to Defendants' Emergency Motion for Cease and Desist Order.

## I.  INTRODUCTION

Plaintiffs filed their Complaint asserting claims for unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. §§201 *et seq.*  Plaintiffs filed their claims individually and as a collective action under the FLSA, 29 U.S.C. §216(b), on behalf of other similarly situated employees.  Additionally, the initial and subsequent Amended Complaints also assert claims for unpaid non-overtime wages (for weeks where plaintiffs and other proposed class members worked less than 40 hours in a week and thus were not covered under overtime provisions of the FLSA) under state laws including state wage and hour laws, breach of contract, and unjust enrichment.   Plaintiffs alleged original jurisdiction of this Court under the Class Action Fairness Act ("CAFA") and are seeking class action treatment under Rule 23 of the Fed. R. Civ. P. for their state law claims.

Plaintiffs' counsel set up a website at http://www.tpclassaction.com to provide information regarding the lawsuit to plaintiffs, members of the public, and other interested persons who may be potential witnesses or who desire more information about the matter. *See* Exhibit A, *Declaration of Jesse S. Brar* (hereinafter "Ex. A, *Brar Decl.*") and Plaintiffs' Updated Website (Attached hereto as Exhibit B).  Defendants complain about Plaintiffs' website and seek to restrain Constitutionally-protected, free speech rights of Plaintiffs' Counsel and Plaintiffs.

## II.  FACTUAL BACKGROUND

Plaintiffs argue that the website as it was originally set up did not contain any misleading or otherwise improper statements. In a desire to be cooperative and eliminate unnecessary drain on Court's and our time and resources, Plaintiffs' counsel has voluntarily made changes to the website to address Defendants objections. *See* Ex. A.*, Brar Decl.*  For the ease of comparing the websites before and after the changes, we have attached the changed website with the changes highlighted. *See* Exhibit B, Updated Website with the Changes Highlighted (hereinafter "Ex. B, Updated Website").  These changes include:

1.   Changing the Homepage title to include "collective" action and addition of a note explaining that: "Under Section 216(b) of the Fair Labor Standards Act a lawsuit for unpaid wages or overtime compensation is called a 'collective action' which is similar to but not identical to a 'class action' under Rule 23 of the Federal Rules of Civil Procedure." Ex. A., *Brar Decl.* at ¶6a.

2.   Additionally, to clarify that Plaintiffs' counsel represents named Plaintiffs and that the website is maintained by the attorneys representing the plaintiffs and Employees who have filed a written consent to become party plaintiffs in this case.  The title on the home page of the website reads, "By Attorneys for Plaintiffs (Employees Who Have Filed a Written Consent to Join)" with a note which states that: "The plaintiffs are current and former employees of Teleperformance. Although the attorneys are sometimes referred to as a class counsel, this lawsuit has not been certified as a collective or class action by the Court as of this time." *Id.* at ¶6b.

3.    Furthermore, Plaintiffs' counsel has changed the Homepage to state: "Under FLSA (which governs payment of overtime wages), there is a 2 or 3-year statute of limitations. That is, you can recover unpaid overtime wages only for 2 or 3 years going back from the date on which you file your written consent to become party plaintiff or "consent to join" form. Because of the statute of limitations, every day in which you delay *either joining this lawsuit or taking alternative legal action, such as filing your own lawsuit*, will reduce or eliminate your ability to recover money. Therefore, if you want to join this lawsuit and possibly recover unpaid overtime to which you may be entitled by law, you must act immediately (by filing the consent form).  ." Ex. A., *Brar Decl.* at ¶7b.

4.    Finally, on the Homepage under the heading "What You Must Do to Receive Any Money You May be Owed," Plaintiffs' counsel has added the following text: "*If you believe you are eligible to participate in this lawsuit* and want to recover any money if it is successful, you can join the lawsuit by filing the consent form. If it appears that you may be eligible to participate, we will file the consent form with the Court. The Court will determine the validity of your claim. You can also call us at 801.269.9541 to discuss your situation. *Of course, you can consult another attorney of your choice*." Ex. A., *Brar Decl.* at ¶6d.

5.    In addition to making the changes on the Homepage of the website, we have made additional consistent changes to the website, including the pages entitled, "Consent Form-Written Consent to Become Party Plaintiff under the FLSA," "Join the Lawsuit," and "Important Information about the Case."   On the

webpage entitled "Consent Form," Plaintiffs' counsel revised the original text to read: "If you worked for Teleperformance as a Customer Service Representative or Agent in the past three years, you may be eligible to receive unpaid wages and overtime. *If you believe you are eligible to participate in this lawsuit* and want to recover any money if it is successful, simply fill out this consent form and return it to the address listed below. If it appears that you may be eligible to participate, we will file the consent form with the Court. *The Court will determine the validity of your claim.* You can also call us at 801.269.9541 to discuss your situation, *or you can consult another attorney of your choice*…Teleperformance employees who do not join in *this lawsuit* by filing the consent form will not be allowed to share in the *recovery of any unpaid federal overtime wages resulting from this lawsuit* since FLSA requires that an employee must execute a written consent to become party plaintiff (i.e., file a written consent to join) *to be eligible for any recovery resulting from this lawsuit*. Ex. A., *Brar Decl.* at ¶6e.

6.      On the webpage entitled "Important Information about the Case," Plaintiffs' counsel revised the original text to read: "In May 16, 2008, a group of current and former Teleperformance employees filed a collective action lawsuit to recover unpaid wages and overtime.  The lawsuit by the employees seeks collective and class action treatment, *but as of this time, the Court has not certified a collective or class action*.  These employees believe that Teleperformance (including CallTech Communications, LLC, a Teleperformance company) has certain policies and practices by which employees were wrongfully

4

deprived of wages that were lawfully owed to them.  These employees filed this lawsuit on their own behalf, and also as a collective/class action on behalf of other former and current Teleperformance employees. . . Please note: *Due to time limits associated with this type of case, it is important that you contact us, or an attorney of your choice*, as soon as possible to protect your rights." Ex. A., *Brar Decl.* at ¶6f.  Additionally, the same footnotes as on the Homepage explaining the "collective action" under the FLSA were also added.

7.     On the webpage entitled "Join the Class Action Lawsuit," Plaintiffs' counsel revised the original text to read: "Several Teleperformance employees have filed a collective/class action lawsuit against Teleperformance to recover unpaid wages and overtime. *However, as of this time, the Court has not certified this lawsuit as a collective action or a class action*. Any employee who worked for Teleperformance nation-wide in a Call Center or in WAHA program in the United States in the last three years may join in this lawsuit by filing the consent form.  The *FLSA requires that for an employee to recover any unpaid overtime wages resulting from this lawsuit*, the employee must execute a written consent to become party plaintiff (i.e., file a written consent to join). . . If you believe you are eligible to participate in this lawsuit and want to recover any money if it is successful, simply fill out this consent form and return it to the address listed below. If it appears that you may be eligible to participate, we will file the consent form with the Court. The Court will determine the validity of your claim. You can also call us at 801.269.9541 to discuss your situation, *or you can consult*

*another attorney of your choice*. . . Teleperformance employees *who do not join in the FLSA claims of this lawsuit* will not be allowed to share in the recovery of any federal overtime wages that may be awarded *in this lawsuit*. . . If you are interested in joining *this lawsuit* so that you can share in *any recovery of overtime wages resulting from this lawsuit*, you must send in a completed, signed "Consent to Join" form." Ex. A., *Brar Decl.* at 6g.

8.     Additionally, under the heading "Join Promptly -- Delay Could Reduce Any Recovery," Plaintiffs' counsel revised the original text to read: "In an FLSA action, a successful claimant (i.e., a plaintiff) may be able to recover unpaid overtime compensation for a limited time period (legally called the "statute of limitations" period).  This period is usually 2 years, or 3 years if the Court finds that Defendant "willfully" violated the FLSA.  Therefore, *if* you believe you are eligible and *decide to join this lawsuit*, you should return the Consent Form without delay, or *consult an attorney of you choice without delay*." *Id.*

9.     Finally, again to ensure the website is beyond reproach and no future issues related to it will arise, several other revisions were made to the website not raised by Defendants' motion, including adding in multiple locations that individuals may retain an attorney of their choice.  For ease of comparison with the printout of the website submitted by the Defendants, the revised website with changes highlighted is attached herewith as Exhibit B.  For a better printout and ease of reading, the attached Exhibit B is a text-only printout of the website.  (*See* Exhibit C - *Printout of the website with graphics*).

## III.  LEGAL ARGUMENT

**A.     An "Emergency" Motion is an Improper Procedural Vehicle**

Plaintiffs ask that this Court deny Defendants' motion any kind of "emergency" status. The applicable procedural rules do not recognize such a device. Motions must be brought in the manner set out by the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 7(b2).

By titling its filing an "emergency" motion, Defendants seek a quick ruling without further development of this litigation.  The rules applicable to motions, however, do not provide for such relief. *See* Local Rule 7.2(a)(2) (response to motion brought under Rule 12(b) or Rule 56 due thirty days after service; response to other motions due fifteen days after service). The only type of motion for which unusually speedy relief is arguably available is a motion for a temporary restraining order. *See* Fed. R. Civ. P. 65(b) (allowing *ex parte* proceedings and two-day notice of dissolution motion). However, Defendants have neither sought, nor shown entitlement for, a temporary restraining order pursuant to Fed. R. Civ. P. 65 – and therefore we ask this Court to refuse giving Defendants' motion any "emergency status" with regards to scheduling, or in any other aspect of this suit.

**B.     Defendants are Not Entitled To the "Cease And Desist Order" Because There Was Nothing Misleading/Inaccurate About The Website And Amendments Have Been Made To The Website**

Plaintiffs in collective actions have a recognized First Amendment right to communicate with potential witnesses and potential plaintiffs.  All of the cases cited by Defendants refer to the Court's oversight role with regards to official notice (and not pre-notice communications such as the website in the instant case), or to the Court's power to prohibit misleading and/or  inaccurate information, which, as set forth below, is not at issue in this case. Courts may not restrict

attorney speech in the absence of one of these (or similarly pressing) needs. *See Bates v. State Bar of Arizona*, 433 U.S. 350, 364 (1977).

1. ***Plaintiffs' Website Is Perfectly Permissible According to Supreme Court Precedent and Normal Practices in Collective/Class Action Cases***

In *Gulf Oil Co. v. Bernard*, the Supreme Court established the stringent standard before a district court may restrict attorney communication between potential class members and counsel to the parties in the action. 452 U.S. 89 (1981) (Attached as Exhibit D). *Gulf Oil Co.* involved a district court's ban on all communications with any actual or potential class member without prior court approval, with the exception of attorney-client communications initiated by the client, communications in the regular course of business, or communications protected by a constitutional right. *Id.* The Supreme Court struck down the order. The Court held that "[a]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties. Only such a determination can ensure that the court is furthering rather than hindering the policies embodied in the Federal Rules of Civil Procedure." *Id.* at 101-02.

Though *Gulf Oil Co.* involved a Rule 23 class action, the Court's concern with restricting speech in that case is equally applicable in this case. The *Gulf Oil Co.* Court recognized that attorney speech is not protected merely for the sake of free speech itself, but also for broader public policy goals, particularly citizens' rights to have access to the judicial system. The *Gulf Oil Co.* Court noted that the Court must analyze any proposed restriction of communications by considering "whether the restraint is justified *by a likelihood of serious abuses.*"  452 U.S. at 104

(emphasis added).   Likewise, the *Bates* Court noted that part of the concern in protecting collective activity undertaken to obtain meaningful access to the courts is that "the aggrieved receive information about their legal rights and the means of effectuating them." 433 U.S. at 377 n.12.

FLSA opt-in cases command special sensitivity to the concern for apprising individuals of their legal rights because of the requirement that individuals affirmatively opt-in to the suit in order to recover money owed them. *See* 29 U.S.C. §216(b). For this reason, courts have specifically expressed reluctance to interfere with communication designed to include individuals in a class because inclusion fulfills efficiency purpose of collective action. *See e.g. Heagney v. European American Bank*, 122 F.R.D. 125, 130 (E.D.N.Y. 1988) (Attached as Exhibit E).   In *Heagney*, an ADEA opt-in case, the court allowed plaintiffs' counsel to write letters to potential class members regarding the suit but declined to rule that plaintiffs first must be authorized to do so. 122 F.R.D. at 130.   Similarly, in *Shivers v. Metropolitan Atlanta Rapid Transit Authority,* the court held that union officials had a First Amendment right to inform their members that each individual member needed to affirmatively file suit to recover under the FLSA. Civ. No. C854519, Not Reported in F. Supp., 1986 WL 15379, *4 (N.D. Ga. 1986) (Attached hereto as Exhibit F).

Finally, it is a widely-accepted practice in collective/class action cases to use webpages as a means of disseminating information and making contact with potential witnesses and/or plaintiffs. (*See examples attached as Exhibit G hereto*).   The Manual for Complex Litigation, Fourth, § 21.12, observes this, noting that "[m]any class action attorneys establish Internet Web sites for specific class actions, in addition to using conventional means of communication, such

as newspapers." The Manual also notes that judges cannot restrict pre-certification communication with proposed class members except in cases of manifest, serious misconduct. *Id*. Broadly cast communication serves the objectives of FLSA's remedial purposes,[1] especially the FLSA opt-in provision, allowing potential claimants to make an informed but uncoerced decision about whether to join this suit.

In the instant case (absent a showing of inaccurate/misleading information), restriction of the website would be contrary to the standard set forth in *Gulf Oil Co.*, and would undermine the purposes of the collective action provision of the FLSA.   Furthermore, Plaintiffs would be harmed by any delay in contacting potential witnesses, and providing information to potential plaintiffs, whose claims against Defendants are diminished on a daily basis. *See* 29 U.S.C. § 255(a) (claims barred if not brought within, at most, three years after accrual).   Plaintiffs' counsel clearly have the right to pursue contacts, through means protected by the First Amendment, to develop the factual evidence required to pursue Plaintiffs' claims and to provide information to potential plaintiffs and/or class members.

---

[1] The principal congressional purpose in enacting the FLSA was to protect all covered workers from substandard wages and oppressive working hours. . . [and to ensure that employees] would be protected from the evil of 'overwork' as well as 'underpay.'" *Barrentine v. Arkansas Best Freight System, Inc.*, 101 S.Ct. 1437, at 1444 (1981)(citations omitted). The FLSA's overtime rules, "like the other portions of the Fair Labor Standards Act, are remedial and humanitarian in purpose. Such a statute must not be interpreted or applied in a narrow, grudging manner." *Giles v. City of New York*, 41 F. Supp. 2d 308, 316 (S.D.N.Y. 1999)(quoting *Tenn. Coal, Iron & R.R. Co., et al. v. Muscoda Local No. 123, et al.*, 64 S.Ct. 698 (1944). The Collective action provisions of the FLSA whereby individual employees can act collectively, pooling resources to lower costs, effect the FLSA's remedial goals that "all our able-bodied working men and women [receive] a fair day's pay." *A.H. Phillips v. Walling*, 65 S.Ct. 807, at 808 (1945). By informing potential class members of his FLSA claim Plaintiff is allowing litigation to be consolidated and cost effective, which precisely conforms to the purposes of the FLSA. *Hoffman-LaRoche v. Sperling*, 493 U.S. 165 (1989).

**2.    *Plaintiffs' Counsel's Website, As it Originally Existed, Was Not Improper – But Plaintiffs' Counsel Has Nevertheless Modified the Website to Address Defendants' Concerns***

Plaintiffs are not, of course, permitted to make misleading statements on a website. *See Maddox v. Knowledge Learning Corp.*, 499 F. Supp. 2d 1338 (N.D. GA 2007) (Attached hereto as Exhibit H).  However, contrary to Defendants assertions, Plaintiffs' counsel did not make improper statements on its website. The statements on the website are consistent with the facts and law pertaining to the case.  Regardless, to show good faith, Plaintiffs' counsel has revised the website to address each of Defendants' concerns.

First, Defendants complain that the webpage incorrectly stated that Plaintiffs' counsel represent "the employees," when, in fact, they only represent the named Plaintiffs, and those employees who have filed a consent form, until a class is certified.  Plaintiffs respectfully assert that this terminology was used simply and logically as a way to distinguish between the counsel for the Defendant (the employer) and counsel for the Plaintiffs and opt-ins (the employees) – because laymen do not understand the terms "Plaintiff" and "Defendant."  Moreover, the assertion was true because the named Plaintiffs are employees, and have sued on behalf of themselves and other similarly-situated employees.  The 200+ opt-ins are employees. There is simply no other layman's term to apply to them, as a group, besides "the employees." Nevertheless, out of an abundance of caution, modifications were made to the website to clarify that counsel are representing the Named Plaintiffs and employees who have filed a written consent to join the lawsuit.  Plaintiffs are current and former employees of Teleperformance and have filed the lawsuit on behalf of themselves and other similarly-situated employees.

Second, Defendants complain that the website does not state that the employees have the right to file their own lawsuits or retain their own counsel.  Although the *Maddox* case, 499 F. Supp. 2d 1338, 1344 (N.D. GA 2007), cited by the Defendants admittedly did order Plaintiffs' counsel to include such a statement in its webpage, its authority for doing so is questionable. After all, it is one thing to prohibit misleading/inaccurate statements by counsel – and another thing entirely to require every attorney, when contacting potential plaintiffs through a television commercial, website, or any other permissible means, to state affirmatively that the recipient of the information has the right to hire some other attorney if they want to.  And it is one thing for the court to require such a statement in a court-approved notice (because of the neutrality required by the court's approval of the notice), and another thing to require the attorneys themselves to do so in their communications.  The *Maddox* case did not make these obvious distinctions.  Therefore, although counsel for Plaintiffs do not believe they are required to make such a statement in their website for the reasons just stated, they have nevertheless, in the interest of reasonable resolution, added a statement to this effect.

Third, Defendants complain that by stating that employees must file a consent form to recover unpaid wages under FLSA, the website implied or stated that employees must join this lawsuit (as opposed to perhaps filing their own separate lawsuit) and be represented by these attorneys (as opposed to hiring other attorneys) in order to recover any unpaid wages.  Again, the website is about this lawsuit, and Plaintiffs don't believe that the duty to refrain from inaccurate/misleading statements includes a duty to inform potential plaintiffs of "all of their other options."  Nevertheless, Plaintiffs' counsel did include, in the "frequently asked questions" section of the original version of webpage, a statement to the effect that employees have the right

to file their own separate lawsuits.  (*See* Exhibit A to Defendants' Emergency Motion, page 22,

question 12).  Moreover, Plaintiffs counsel have modified the website to say that to "share in any

recovery of overtime wages resulting from this lawsuit" a consent form must be filed "in order to

participate in this lawsuit," and as stated above, have also added a statement to the website that

employees can consult an attorney of their choice.

Finally, Defendants object to the website's reference of this matter as a "class action."

This matter has been filed as a collective action under FLSA and as a class action under Rule 23

of Fed. R. Civ. P.  The complaint was filed by individual plaintiffs on their own behalf and also

as a collective and class action on behalf of other similarly situated employees of the Defendants.

The complaint contains factual and legal allegations for class and collective action treatment of

this matter.  More than 200 employees have signed and filed consent forms, so far, based on the

tentative class-action nature of the case.  The fact that the class has not been certified does not

undermine the nature of the claim – and there is really no way to accurately describe the nature

of the lawsuit, in terms laymen can understand, other than to tentatively call it a class action

lawsuit.  It is not deceptive or misleading to do so. However, the webpage has been amended to

say that the lawsuit has not been certified by the court as a class action.

In addition to these four issues, each of which Defendant alleged were

misleading/inaccurate statements, Defendants also complain about potential plaintiffs/claimants

being "spoon fed" the facts of the case as alleged in the Complaint.  On this point, Defendants do

not claim that the alleged facts are "false or misleading" – and thus, this point does not fall

within any of the case law cited by Defendants (for court prohibition on attorney

communication).  Defendants cite no authority for their proposition that attorneys are prohibited

from stating with clarity the alleged violations involved in a case (and it would be ridiculous to assert so, since the alleged violations must be stated with clarity in the complaint).  And clearly, Plaintiffs must also do so in widely-broadcast communication, in order to establish the basis for the lawsuit, so that only potentially similarly-situated employees file consent forms if they choose to join this lawsuit.  Instead of alleging that the factual allegations are false or misleading, Defendants posture this point as the basis for a motion under the Rule 403 of the Federal Rules of Evidence.   Thus, this issue is addressed separately below.

In sum, Plaintiffs' counsel respectfully asserts that none of the challenged statements were misleading or inaccurate, and thus, were protected speech under the *Gulf Oil Co.* standard. Nevertheless, Plaintiffs' counsel has made revisions that adequately address each of Defendants' objections.

3. ***Defendants' Own Cases Recognize That the Court's Oversight Role Is Not Triggered By Pre-Notice Communication, and That "Curative Notice" Is Only Available as a Remedy When Improper "Notice" Has Been Sent Out***

Aside from the fact that Plaintiffs' counsel's communications constitute protected speech, this speech did not occur at a stage to which the *Hoffman-La Roche* analysis on which Defendants rely is applicable. Defendants' own case law recognizes that this lawsuit is not yet at a stage at which the Court's normal oversight role in collective action cases is triggered (i.e., absent a showing of inaccurate/misleading information). This case is in its earliest stages and has not reached the conditional certification and "notice period"[2] to which *Hoffman-La Roche* is

---

[2]  The Court in Tenth Circuit use a two-tiered approach to determining whether to certify a collective action under Section 216(b). See e.g. *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997), *see also Thiessen v. GE Capital Corp.*, 267 F.3d 1095 (10th Cir. 2001). Initially, at the so-called "notice stage," the district court decides - usually based only on the

relevant. *See Maddox v. Knowledge Learning Corp.*, 499 F. Supp. 2d 1338 at 1342. The Supreme Court noted in *Hoffman-La Roche* that "[c]ourt intervention in the notice process for case management purposes is distinguishable in *form and function* from the solicitation of claims," and cautioned that courts do not have "unbridled discretion" in managing collective actions. *Id.* (*quoting Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 174 (1989) (emphasis added) (Attached hereto as Exhibit I).

The Supreme Court has held, in the context of an opt-in collective action, that the district court may "begin its involvement early, at the point of the *initial notice*, rather than at some later time." *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 171 (1989) (emphasis added). However, the Supreme Court in *Hoffman-La Roche* did not reach the issue of the district court's authority to manage pre-notice solicitations of potential claimants. *See Id.* at 174.

Defendants' reliance on is *Hoffmann-La Roche* is misplaced. In fact, even Defendants' own case law specifically recognizes that *Hoffmann-La Roche* did not reach the issue of courts' authority to manage pre-notice communication with potential claimants. *See Maddox v. Knowledge Learning Corp.*, 499 F. Supp. 2d 1338 at 1342. In this case, the Court has not reviewed or approved a notice to be sent out, and the Plaintiffs have not sent out notice of this action. Thus, Plaintiffs' counsel did not obviously did not preempt this Court's right to monitor the notice process, since that process has not yet begun.

---

pleadings and affidavits which have been submitted - whether "notice" of the action should be given to potential class members. This determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given "notice" and the opportunity to opt-in. *See also Hipp v. Liberty National Life Insurance Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001).

Likewise, Defendants' request for "curative notice" as a remedy is misplaced, not only because there were no misrepresentations (as argued above), but also because the authority cited by Defendants refer, again, only to a court's oversight role in the "notice process" – and provides that where improper notice was sent out without a court's supervision, curative notice was a proper remedy. *Spoerle v. Kraft Foods Global, Inc.*, 07CV300, 2008 U.S. Dist. LEXIS 37678, * (D. Wis., May 5, 2008) (Attached hereto as Exhibit J).  In this case, Plaintiffs' counsel's website is not subject to the strict review that would be appropriate for reviewing a Court ordered Notice to the putative class—to ensure that such communication of "balanced," because in that situation the Notice issues under the authority of the Court. *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 174 (1989).  Here, the Court is presented only with one party—Defendant—trying to limit the First Amendment rights of its adversary.  While the Defendant may also wish to limit participation in this action and thereby limit its liability to its employees for unpaid overtime, that goal should not be given effect by this Court.

**4.      Even in Cases Involving Inaccurate/Misleading Statements, Courts Have Only Ordered Modifications, and Not "Dismantling' of Websites (as Requested by Defendants)**

In the cases cited by Defendants, wherein there was a finding of improper communication, courts ordered the revision of the offending language and not the shut down of the webpage itself. *See Maddox v. Knowledge Learning Corp.*, 499 F. Supp. 2d 1338, 1344 (N.D. Ga. 2007); s*ee also Threatt v. Residential CRF, Inc.*, No. 1:05-CV-117, 2005 WL 2454164, at * 3-4, *2005 U.S. Dist. LEXIS 43222,* * (N.D. Ind. Oct. 4, 2005) (because early notice to potential class members is desirable to limit impact of statute of limitations, remedy for overstating potential class in communication is to send out amended communications) (Attached as Exhibit

K); *Jones v. Casey's General Stores*, 517 F. Supp. 2d 1080, 1089 (S.D. Iowa 2007) ("while the court believes it would be an abuse of discretion to order an entire website shut down, it concludes nonetheless that the website must be substantially modified to rectify the concerns articulated herein.") (Attached hereto as Exhibit L).  Given Plaintiffs' revisions to the website, the Court should deny Defendants' motion asking the Court to order shut down of Plaintiffs' website.

**C.      Defendants Rule 403 Motion, Asking That Certain Evidence Be Excluded At Trial, Is Premature and Baseless**

Defendants have requested that the testimony of every employee who viewed the website be excluded on the grounds that it is more prejudicial than probative, and bases their motion on the fact that Plaintiffs' counsel has outlined with clarity the violations that are alleged in the case.

Defendants cite no authority for the proposition that attorneys are prohibited from stating the theory of their case (including the factual allegations) with clarity – because there is no such authority.  Also they cite no authority for the proposition that a witness is prohibited from testifying about his own experiences if he ever heard or read any third-person account related to those experiences – again, because there is no such authority.  And there is also no authority for Defendants' speculation that everyone who hears or reads a third-person account will automatically opt to perjure him or herself, and that this propensity for perjury must be presumed by this Court.  If the witnesses are irreparably tainted (i.e., to the extent that any concerns couldn't be addressed through cross-examination) simply because they have been informed of the factual allegations of a case, then anyone who reads the complaint would also be irreparably tainted. Plaintiffs argue that is a baseless assertion by the Defendants.

Furthermore, the undisputed proposition that an attorney cannot tell a witness how to testify, or replace the witness's testimony with that of the attorney's is simply not at issue in this case.  In the passage cited by Defendants, Plaintiffs' counsel clearly states that "If" an employee was subjected to these practices, they might be eligible to join the lawsuit.  This is not telling a witness how to testify, but an attempt to inform the readers and to exclude from the lawsuit individuals who were and/or are not subjected to these practices.  Defendants' accuse Plaintiffs' counsel of improperly influencing and coaching prospective plaintiffs and/or witnesses by providing examples of the type of practices which would be violations of the FLSA. However, Defendants have offered no evidence whatsoever to back up their assertions.

Examples of violations of the FLSA are included in the website, not to coach, but to educate.  Many employees have no knowledge or understanding of FLSA's provisions.  For example, employees frequently misunderstand a company's duty to pay overtime when an employee works more than 40 hours a week, even if the company did not affirmatively ask the employee to work the extra time. Or that a company has a duty to pay the overtime for off-the-clock work over 40 hours in a work week.  Or when an employee is not paid short intervals during a continuous workday.  Thus, many employees do not understand the provisions of FLSA and its requirements.  Plaintiffs' counsel included examples of certain violations of FLSA in the website so that employees can know and understand their rights under the FLSA.

Finally, this motion is premature since no discovery has been done in this case, so there is no way of knowing who will testify, nor how probative any one person's testimony might be. For example, if a company's time records and policy manuals reflect the practices alleged by the employees, this will strongly support the employees' testimony to that effect.  There might also

be employees who testify that they were subjected to some of the alleged violations, but not all of them – which would undercut Defendants' assertion that the facts were "spoon fed" to the witness. As another example, there may be managerial employees who saw the website and will testify, but were not subjected to the practices themselves – yet, they would also be excluded by Defendants requested broadly sweeping "order excluding evidence."   Therefore, Defendants request to exclude evidence under Rule 403 should be denied.

## IV.  CONCLUSION

Based on the forgoing reasons Plaintiffs pray that this Court deny Defendants' Motion for Cease and Desist Order.

Respectfully submitted, this 9th day of September, 2008.

/s/Sharon Preston
Jesse S. Brar
Sharon L. Preston
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on <u>September 9, 2008</u>, I electronically filed the foregoing Motion for Extension of Time with the Court using the CM/ECF system which sent notification of such filing to the following:

Gerry B. Holman
Leslie L. Abbott
Hannah J. Cole
Mary C. Dollarhide

<u>/s/Sharon Preston</u>
Jesse S. Brar
Sharon L. Preston
*Attorneys for Plaintiffs*

20