IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| PAULA SELF, LINDA DUNCAN, SHERI KIDDY, LESLIE DEMULL, and TIMOTHY VAN HOOSE, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>TPUSA, INC.; AND TELEPERFORMANCE GROUP, INC.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:08cv395<br><br>Magistrate Judge Paul M. Warner |

Before the court is TPUSA, Inc. and Teleperformance Group, Inc.'s (collectively, "Defendants") Motion for Emergency Cease and Desist Order.[1] A hearing on the motion was held on September 12, 2008. At the hearing, Defendants were represented by Mary C. Dollarhide, Tim Dalton Dunn, Gerry B. Holman, and John May; and Paula Self, et al. (collectively, "Plaintiffs") were represented by Sharon L. Preston and Jesse S. Brar. Before the hearing, the court carefully considered the motion, memoranda, and other materials submitted by the parties. After considering the arguments of counsel and taking the motion under advisement, the court renders the following memorandum decision and order.

---

[1] *See* docket no. 26.

## DISCUSSION

In their complaint, Plaintiffs have asserted claims against Defendants for unpaid overtime wages under the Fair Labor Standards Act (the "FLSA"). *See* 29 U.S.C. §§ 201–219. Plaintiffs, current and former employees of Defendants, filed their claims individually and as a collective action under the FLSA on behalf of other similarly situated employees. *See* 29 U.S.C. § 216(b). Plaintiffs have also asserted various state law wage, breach of contract, and unjust enrichment claims.

Under the FLSA, "an action . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." *Id.* The statute further provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* While section 216(b) gives little guidance as to the procedure for gathering consents from potential plaintiffs, the United States Supreme Court has stated that "[b]ecause trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute, it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some later time." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989). While Plaintiffs in the instant matter have filed approximately 250 signed consent forms to date, Plaintiffs have yet to move the court to certify a class.

Counsel for Plaintiffs have established a website under the domain name www.tpclassaction.com (the "tpclassaction website" or the "website"), which provides information about the case and urges former and current employees of Defendants to join the lawsuit by signing consent forms provided on the website.[2]  Defendants are seeking a cease and desist order requiring Plaintiffs to dismantle the tpclassaction website on the grounds that it provides misleading and inaccurate information.  Defendants are also requesting that Plaintiffs be prohibited from admitting into evidence any information concerning alleged unpaid hours obtained from those opt-in Plaintiffs who relied on the misrepresentations presented on the website.  If such evidence is not excluded, Defendants request in the alternative that the existing consent forms be stricken and curative notice be sent to those opt-in Plaintiffs who joined this action through the website.

Defendants contend that, through the tpclassaction website, Plaintiffs' counsel urge individuals to join this litigation, asserting that the only way to receive any money they may be owed is to join this lawsuit by filing Plaintiffs' consent form with Plaintiffs' counsel.  For individuals who are not sure whether they are owed any money, Defendants assert that the website provides the precise story that must be told in order to have an unpaid wages claim that would fit within the allegations made in Plaintiffs' lawsuit.  Defendants believe that the

---

[2] In their reply memorandum, Defendants stated that Plaintiffs were operating a second identical website at www.uslaborlawyer.com.  At the hearing, counsel for Plaintiffs indicated that it was merely a "test website" and that they have voluntarily removed it from the internet.  Plaintiffs also indicated that it had no other websites in operation other than the tpclassaction website.

inaccurate information contained on the website threatens to taint the entire class of putative plaintiffs.  Because Defendants' requests that the tpclassaction website be voluntarily corrected have gone unaddressed, Defendants filed the instant motion.

In response, Plaintiffs argue that the website as it was originally set up did not contain any misleading or otherwise improper statements.  Nevertheless, Plaintiffs contend that in a desire to be cooperative they have voluntarily made changes to the website in order to address Defendants' objections.  Specifically, Plaintiffs' counsel have modified the website to (1) clarify that they represent the named Plaintiffs and employees who have filed written consents to join the lawsuit rather than all of the employees; (2) state that while those interested in pursuing FLSA claims against Defendants may join this lawsuit and be represented by Plaintiffs' counsel, they also have the right to file their own lawsuits or retain counsel of their own choosing; and (3) indicate that while this case is tentatively a class or collective action, it has yet to be certified by the court as such.

As an initial matter, the court commends Plaintiffs' attorneys for making substantial changes to the website without being ordered to do so.  That notwithstanding, the court also agrees with Defendants that some misleading statements remain on the website.  In particular, certain statements on the website are presented as factual and legal conclusions rather than merely as Plaintiffs' contentions.

Because of the potential for abuse in class actions and FLSA collective actions, "'a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties.'"  *Hoffmann-La*

*Roche Inc.*, 493 U.S. at 171 (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981)).  In *Hoffman-La Roche*, the Supreme Court addressed only court intervention at the conditional certification/notice period.  *See id.* at 174 ("Court intervention in the notice process for case management purposes is distinguishable in form and function from the solicitation of claims.").  Lower courts addressing the issue of pre-notice communications with putative plaintiffs have concluded that "it is within the court's discretion to prohibit [counsel for the plaintiffs] from issuing pre-certification statements that are factually inaccurate, unbalanced, or misleading." *Maddox v. Knowledge Learning Corp.*, 499 F. Supp. 2d 1338, 1344 (N.D. Ga. 2007); *see also Jones v. Casey's Gen. Stores*, 517 F. Supp. 2d 1080, 1089 (S.D. Iowa 2007) ("[O]ne-sided, misleading communications with putative opt-in collective members . . . could easily have the effect of tainting the entire putative class and jeopardizing this entire litigation.").  On the other hand, "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil, Inc.*, 452 U.S. at 101.  "In addition, such a weighing–identifying the potential abuses being addressed–should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Id.* at 102.  "In general, an order limiting communications regarding ongoing litigation between a class and class opponents will satisfy first amendment concerns if it is grounded in good cause and issued with a heightened sensitivity for first amendment concerns." *Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1205 (11th Cir. 1985).

Like the court in *Maddox*, this court believes that it would be an abuse of discretion to require Plaintiffs to shut down their website completely. *See* 499 F. Supp. 2d at 1344. At the hearing, counsel for Defendants indicated that while Defendants are not opposed to a website per se, they are opposed to this particular website under this domain name. As such, Defendants' counsel requested that the court order Plaintiffs to shut down the tpclassaction website and, if counsel still wished to have a website, require them to choose a different domain name. The court is unwilling to order Plaintiffs to do so. While the court is sympathetic to Defendants' concerns regarding potential economic damage resulting from Plaintiffs' website, the court concludes that requiring Plaintiffs to shut down the website and choose another domain name would be excessive. However, as stated above, the court agrees that the website still contains some misleading statements. Accordingly, the court orders Plaintiffs to modify the website to qualify or remove the conclusory language.

Language that courts have found to be problematic in FLSA collective actions include language suggesting that employees must join the class if they wish to be awarded damages for lost wages. *See Spoerle v. Kraft Foods Global, Inc.*, No. 07-cv-300-bbc, 2008 WL 2002221, at *10 (W.D. Wis. May 6, 2008). Also, courts have found websites similar to the tpclassaction website to be questionable where there is "no information informing putative opt-in collective members that they may contact counsel of their own choice, that they are not required to opt-in to this action, or that they may pursue their own action independent of the present litigation." *Casey's Gen. Stores*, 517 F. Supp. 2d at 1088. In addition, courts have required modification of statements presented as conclusions rather than as the plaintiffs' contentions, such as, (1) "If you

6

are a past or present Commercial Sales Representative before March 1, 2004 you are entitled to join this lawsuit"; (2) "The position of Commercial Sales Representative was not a qualified exempt position . . . CompUSA reclassified the position to hourly nonexempt position but that did not excuse CompUSA from obligations to pay all overtime to all such classified employees for the last 3 years"; and (3) "If you worked any hours over 8 in any day, without the required two fifteen minute rest breaks, and on weekends without being paid for those hours you are entitled to be paid for all of your unpaid overtime hours plus damages and interest." *Taylor v. CompUSA, Inc.*, No. CIV A1:04CV718-WBH, 2004 WL 1660939, at *3 (N.D. Ga. June 29, 2004).

While the court will not dictate the exact changes Plaintiffs must make to their website, the court will provide some illustrative examples from Plaintiffs' website. Under the heading "Definition of 'Work' and 'Overtime' under the FLSA," Plaintiffs' provide a "few examples of FLSA violations."

> If an employee is scheduled to work an 8-hour day (or 40-hour work week). [sic] If the employee needs to show up 15 minutes early every day to obtain a work station and/or log in to the system before the employer considers the employee's workday to have begun– then the employee would have a claim of 75 minutes per week of unpaid overtime. That is because the extra 15 minutes was above and beyond the 40-hour work week.

In this example, the court recommends that Plaintiffs rewrite the phrase, "the employee would have a claim," to say, "the employee may have a claim." The court further recommends that Plaintiffs rewrite the phrase, "the extra 15 minutes was above and beyond," to say "the extra 15 minutes may be considered above and beyond."

In addition, some facts set forth on Plaintiffs website are presented as though they are uncontested.  For instance, Plaintiffs list the following "policies and practices" of Teleperformance:

> The following is a list of the Teleperformance policies and practices that are addressed in the lawsuit:
> - Employees were not paid for pre- and post-shift activities (primarily logging into and out of the computer system before/after receiving calls);
> - Employees were required to report to work at a certain time and then made to wait from 10-20 minutes for an available work station, and were not paid until they were actually logged into a work station;
> - Minutes were deducted from the employee's pay for short periods during the workday when the employees were logged out of the system; for example, to go the [sic] restrooms, etc. . . .

Plaintiffs offer these statements as though they are Defendants' uncontested policies and practices.  However, Plaintiffs are merely alleging that these are Defendants' policies and practices; Defendants have denied that these are their policies and practices.  Accordingly, the website should reflect that these are merely Plaintiffs' contentions rather than established, uncontested facts in the lawsuit.

Another example under the FAQ section of the website implies that violations of FLSA have already been established is the following paragraph:

> **13. How did Teleperformance not pay overtime correctly?  The law requires that employees be properly paid for all time they are permitted to work.**  If an employer fails to pay or wrongly denies wages and overtime to its hourly employees for all the time they are permitted to work, a court may find serious violations of FLSA.  You can get <u>more information</u> about this case <u>here</u>.

Again, this statement should be rewritten to accurately reflect that it is merely Plaintiffs' contention that Defendants did not pay overtime correctly.

The foregoing examples should give Plaintiffs some direction in making changes to the entire website.  Information presented on the website must be factually accurate and reflect that Plaintiffs' allegations are just that: allegations.  The court encourages the liberal use of words and phrases like "allege" and "assert" and "Plaintiffs claim" and "Plaintiffs believe."

Plaintiffs shall have ten days from the date of this order to correct and improve the website using the directions and suggestions above.  After Plaintiffs have made these changes to the website, should Defendants have concerns with the remaining language, they may again move for court intervention.  Defendants must cite the specific problematic language in any submissions to the court.

Defendants also request that Plaintiffs be prohibited from admitting into evidence any information concerning alleged unpaid hours obtained from those opt-in Plaintiffs who relied on the misrepresentations presented on the tpclassaction website.  The court concludes that this would be too extreme a sanction.  In the alternative, Defendants assert that Plaintiffs should be ordered to send curative notice to the website opt-in Plaintiffs and require them to fill out new consent forms.  The court agrees.  The court is concerned that the original website may have misled potential plaintiffs by implying that (1) violations had been established, (2) individuals need only sign the consent form to receive payment, (3) anyone interested in pursuing claims against Defendants must join this lawsuit by filing Plaintiffs' consent form with Plaintiffs' counsel, and (4) this court has already certified a class.  Because Plaintiffs who have already opted in likely did so based at least in part on the information presented on the website, this court

concludes that requiring counsel for Plaintiffs to cure the unqualified and potentially misleading statements is within its discretion.

Accordingly, counsel for Plaintiffs are ordered to draft and send a letter, upon court approval, to all opt-in Plaintiffs who signed and returned consent forms prior to the date of the second website modification, i.e., ten days from the date of this order. This letter shall inform the opt-in Plaintiffs that (1) the factual statements on the website are merely allegations and that no liability has been established; (2) they are not required to join this lawsuit; (3) they may seek counsel of their choice and pursue individual claims against Defendants; (4) a class has not yet been certified by this court; and (5) if they want to remain in this lawsuit as one of the opt-in Plaintiffs, they must fill out and sign another consent form. For purposes of the statute of limitations, the court will consider the date of the previously signed form to be the date of consent.

As a final matter, several days after the hearing, Plaintiffs filed a motion to supplement the record before the court.[3] Specifically, Plaintiffs seek to include the video of a news story addressed by Defendants at the hearing. Defendants oppose this motion. Because the court did not rely upon the news story (either the video or the transcript provided by Defendants) in ruling on Defendants' motion for a cease and desist order, Plaintiffs' motion to supplement the record is **DENIED**.

---

[3] *See* docket no. 51.

## CONCLUSION

Based on the foregoing, Defendants' motion[4] is **GRANTED IN PART AND DENIED IN PART**. Within ten days of the date of this order, counsel for Plaintiffs must modify the website in the manner outlined above. Also within ten days of the date of this order, counsel for Plaintiffs must draft a letter to the opt-in Plaintiffs and submit it to the court for approval. Upon approval from the court, counsel for Plaintiffs must mail the letter, along with a consent form, to the opt-in Plaintiffs within ten days of the date of court approval. In addition, Plaintiffs motion to supplement the record[5] is **DENIED**.

**IT IS SO ORDERED.**

DATED this 19th day of September, 2008.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge

---

[4] *See* docket no. 26.

[5] *See* docket no. 51.